UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| R. A. SCARDELLETTI, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>ANTHONY SANTORO, SR., et al. )<br>)<br>Defendants. )<br>) | Civil Action No. JFM-97-3464 |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO
PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT,
APPROVE THE NOTICE TO THE CLASS, AND SET A DATE
FOR A HEARING TO DETERMINE WHETHER
THE PROPOSED SETTLEMENT SHOULD BE APPROVED**

Plaintiffs, the Trustees of the Transportation Communications International Union Staff Retirement Plan (TCU Staff Plan) and their successor, the International Association of Machinists and Aerospace Workers Pension Plan (IAM Grand Lodge Plan)[1] seek an order (1) making a preliminary determination that the settlement agreement in this matter, attached as Exhibit A hereto, is within a range of reasonableness warranting the distribution of a notice of settlement to the affected class; (2) approving the proposed notice to the class attached hereto as Exhibit B; and (3) setting a date for a hearing to determine whether the

---

[1] As discussed in greater detail herein, the Staff Plan merged with the Grand Lodge Plan on September 5, 2005.

proposed settlement should be approved. The reasons for granting these requests are set forth below.

I.      **Procedural History And Related Litigation.**

This matter has a long history in this Court, the Fourth Circuit Court of Appeals, and the Supreme Court. We summarize that history below:

In 1995, the Trustees of the Plan brought an action against the former trustees of the Plan for breach of fiduciary duty under sections 502(a)(2) and (3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and (3). The Trustees alleged in that action that the former trustees had imprudently recommended an amendment to the Plan, effective January 1, 1991, to provide a cost of living adjustment (the "1991 COLA") that automatically increased every retired Plan participant's benefit by up to 10% for each three-year period following the participant's retirement.

By order dated September 8, 1997, the Court granted in part the Trustees' motion for summary judgment, concluding that the former trustees had breached their fiduciary duty. *Scardelletti v. Bobo*, 897 F. Supp. 913 (D. Md. 1995). The Transportation Communications International Union ("TCU"), the Plan's sponsoring employer, responded to the Court's September 8 order by adopting an amendment, effective November 1, 1997 (the "1997 Amendment") repealing the 1991 COLA for all participants who retired or separated from service before January 1, 1991.

On October 14, 1997, the Trustees filed this action as a defendant class action seeking a declaratory judgment that the 1997 Amendment was a lawful amendment and an order

declaring the 1991 COLA void from its inception because it was the product of a fiduciary breach.

By order dated February 9, 1999, this Court conditionally certified a class consisting of "all active, terminated vested, and retired participants and their beneficiaries in the Staff Plan." By order dated September 14, 1999, this Court modified its February 9, 1999 Order, dividing the class into two subclasses: (1) all class members who retired or terminated service prior to January 1, 1999 (retiree subclass); and (2) all class members who had not retired or terminated service prior to January 1, 1999 (active subclass).[2]

By decision on November 12, 1999, this Court approved a settlement reached with the mediatory assistance of Magistrate Judge Grimm. That settlement provided certain benefit improvements for the retiree subclass. For the active subclass, the accrual rate under the Plan's benefit formula was restored to 2% from 1% to which it had been reduced on January 1, 1995. In addition, the active subclass received a commitment that the sponsor of the Staff Plan would "refrain from adopting any benefit improvements" until the Plan is modified to restore retroactively the normal retirement age to age 60 from age 62 to which it had been increased, and a 10% COLA beginning on the fifth anniversary of the member's retirement. This settlement was ultimately approved by the Fourth Circuit Court of Appeals, after remand from the U.S. Supreme Court. *Devlin v. Scardelletti*, 536 U.S. 1 (2002), *on remand, Scardelletti v. De Barr*, 43 Fed. Appx. 525 (4th Cir. 2002).

---

[2] The instant matter involves only the active subclass – namely, those participants in active service on January 1, 1999.

## II. The Instant Matter.

### A. Background.

Unfortunately, as a result of the precipitous decline in the stock market, Plan assets between December 31, 1999, and December 31, 2002, declined by over 30%. The effect was to create a financial crisis for the Plan and its sponsor, TCU. In August 2005 TCU merged with the International Association of Machinists and Aerospace Workers ("IAM"). As a result of the merger between these two labor organizations, the TCU Staff Plan merged into the IAM Grand Lodge Plan, effective September 12, 2005 (Plan Merger Date).

At the time of the Plan merger, the TCU Staff Plan was funded at approximately 64% of accrued benefits, and the larger IAM Plan was funded at over 100% of accrued benefits. After the merger, the merged IAM Grand Lodge Plan remained, and continues to remain, fully funded at over 100%.

After the merger of the plans, TCU employees began accruing benefits under the terms of the IAM Grand Lodge Plan. Benefits were both increased and reduced from what they were under the TCU Staff Plan. Normal retirement age was reduced from age 62 to age 60, for those in active status at the time of the merger. However, the cap on the number of years a participant could accrue service credits was reduced from 35 to 25 years. The TCU Staff Plan actuary concluded that the present value of the benefit improvements was less than the present value of the benefit reductions. Simply stated, the net result of these changes was a reduction in the actuarially determined value of the benefits.

B.    <u>The Dispute</u>.

The active subclass – which encompasses those in active service on January 1, 1999 – has asserted that the increase in benefits resulting from the merger with the IAM Plan should trigger the requirement in the approved settlement agreement that additional benefits be granted. Specifically, between January 1, 1999, and the Plan Merger Date, some members of the subclass retired prior to reaching age 62, which was the normal retirement age under the Staff Plan at the time. These individuals incurred an early retirement penalty of .5% per month for each month they retired prior to reaching age 62. The active subclass now urges that these members' pensions should be recalculated, retroactively to their date of retirement, with a normal retirement age of 60. Stated differently, the subclass seeks to have pensions that were subject to an early retirement penalty recalculated, retroactively, with a normal retirement age of 60, not 62.

In addition, the active subclass seeks a 10% COLA five years after the date of retirement for those members who retired with an early retirement penalty between January 1, 1999, and the Plan Merger Date. This would apply to the subclass members who retired during this period without an early retirement penalty, as well as to those subclass members who remain in active status.

The Plaintiffs have argued that no such modifications are required because, actuarially, the value of the benefits was not increased, but reduced as a result of the merger. The subclass, in turn, has maintained that the actuarial value of these changes is irrelevant. In their view, the approved settlement provides that benefit improvements described above

are owed when "any" benefit improvements are provided, regardless of whether these improvements are combined with offsetting benefit reductions.

### III. The Settlement.

After spending approximately a year-and-a-half exchanging settlement proposals, actuarial and demographic information, the parties requested the Court to appoint Magistrate Judge Grimm to mediate this dispute. With Judge Grimm's assistance, the parties reached a settlement summarized below and attached in full as Exhibit A:

1. Members of the subclass who retired prior to the Plan Merger Date without an early retirement penalty shall receive a COLA equal to 10% of the member's monthly annuity starting on the fifth anniversary of the member's retirement;

2. Members of the subclass who retired prior to the Plan Merger Date with an early retirement penalty shall (i) have their monthly annuity recalculated effective January 1, 2008, using age 60 as the normal retirement age; and (ii) receive a COLA equal to 7.5% of their monthly annuity as recalculated, starting the later of: January 1, 2008 or the fifth anniversary of the member's retirement;

3. Members of the subclass who terminated their employment relationship with TCU prior to the Plan Merger Date, at a time when they were vested in the TCU Staff Plan and who did not retire prior to the Plan Merger Date, will receive a 10% COLA on the fifth anniversary of the date the member begins collecting benefits under the Plan; but their normal retirement benefits remain at age 62; and

4. Members of the subclass in active status on the Plan Merger Date shall receive a cost of living adjustment equal to 10% of the member's monthly annuity on the fifth anniversary of the member's retirement.

Under the proposed settlement, the subclass will release any and all claims known or unknown that any of them may have against the TCU Staff Retirement Plan and the IAM

Grand Lodge Plan, their current and former Trustees, any other fiduciaries, the TCU and the IAM Grand Lodge, their subordinate bodies and all of their officers, agents, representatives, heirs, administrators, executors, directors, employees, and attorneys from any and all demands, causes of action whether known or hereafter discovered or whether now or hereafter fully, partially or not disclosed except for the undertaking in this Agreement.

The settlement also provides that TCU will pay the reasonable attorney fees and costs incurred in representing the subclass.

For the reasons set forth below, the Court should preliminarily approve this settlement.

**IV.    The Proposed Settlement Should Be Preliminarily Approved For Submission To The Class.**

Rule 23(e) of the Federal Rules of Civil Procedure prohibits the compromise of a class action without the approval of the court. Fed. R. Civ. P. 23(e). The essential inquiry in determining whether to approve a class action settlement is whether the proposed settlement is "fair [and] adequate." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1383-84 (D. Md. 1983). In deciding whether a proposed settlement is fair, "the court is obligated to ascertain that the settlement was reached as a result of good-faith bargaining at arm's length." *Id.* at 1383 (quoting *In re Montgomery County Real Estate Antitrust Litig.*, 83 F.R.D. 305, 315 (D. Md. 1979). Factors such as the procedural posture of the case at the time of settlement, the extent of discovery, the circumstances surrounding the settlement

negotiations and the experience of counsel may be relevant in determining whether the settlement was reached as a result of good faith bargaining. *Id.* at 1383-84.

To determine whether a proposed settlement is adequate, the court weighs the likelihood of the class's recovery on the merits against the amount offered in settlement. *Id.* at 1384. Factors such as the relative strength of the parties' positions on the merits, difficulties of proof or strong defenses that would come up at trial, the anticipated duration and expense of continued litigation, the likelihood of recovery on a litigated judgment and the degree of opposition to the settlement may be relevant in determining the adequacy of a proposed settlement. *Id.*

Courts often use a two-step process to review a proposed settlement. At the first stage, the relevant inquiry is whether the settlement is "within the range of possible approval." *Id.* at 1384 (quoting *Manual on Complex Litigation* § 1.46). If so, then notice of the proposed settlement is sent to members of the class and a hearing is held to consider final approval.

The proposed settlement is plainly within the range of fairness and adequacy required for preliminary approval and notice to Class members.

A. <u>Fairness</u>.

The proposed settlement is fair because it was reached through good faith, arm's length bargaining. While no formal discovery was taken, the Plan provided the Class representative with actuarial estimates of various settlement proposals as well as the actuarial estimate of the present value of the benefit changes made after the Plan merged. In addition,

8

the Class representative consulted his own actuary. After a year-and-a-half of exchanging proposals, actuarial reports and demographic information, the parties sought the assistance of Magistrate Judge Grimm who supervised the final settlement negotiations, assuring that the negotiations were conducted in good faith. Finally, each party was represented in settlement negotiations by counsel with years of experience in the application and interpretation of ERISA.[3]

B. <u>Adequacy Of Proposed Settlement</u>.

In determining the adequacy of the proposed settlement, the Court should weigh the likelihood of plaintiffs' recovery on the merits against the amount offered in settlement. The issue now confronting the parties was not contemplated at the time of the original litigation. The subclass would face significant legal hurdles to prevail in its position that the changes made in the Staff Plan at the time of its merger into IAM Grand Lodge Plan triggered a requirement to pay increased benefits, even though the net effect of these changes was to reduce the value of benefits.

Certainly the circumstances which developed, namely, the stock market meltdown of 2000-2002 and the need for the Plan merger to insure that the promised pensions could in

---

[3] Ken Johnson, counsel for the subclass, was an attorney with the Washington, DC, law firm of O'Donoghue & O'Donoghue from 1984 to 1988, and 1995 to 1999, when he left to become a member of the Greensboro, North Carolina firm of Tuggle, Duggins & Mescham. As noted above, on September 12, 2005, the TCU Plan merged with the IAM Grand Lodge Plan, which has long been represented by O'Donoghue & O'Donoghue. At that time, Mr. Johnson was not a member of the O'Donoghue firm, and he has no financial stake in this matter other than as counsel to the subclass.

fact be paid, was not anticipated by the parties. We believe it is questionable that this Court would interpret the term "any benefit improvement" in the approved settlement to include benefits that were both improved and reduced in a Plan merger, which was clearly in the interest of all participants, including the subclass members.

Given the uncertainty of a recovery by the subclass members, the total amount of the settlement offered is generous. The present value of the benefit improvements provided under the settlement has been actuarially determined by the IAM Grand Lodge actuary to be 87% of the present value of the benefit improvements sought by the subclass.

The settlement requires some sacrifice from those who retired with an early retirement penalty. While this penalty, arising from the normal retirement age being 62 instead of 60, is being restored, such restoration is not being done retroactively. Their pensions will be recalculated with normal retirement age being 60, not 62, but this recalculated annuity becomes effective on January 1, 2008, not retroactively to the date of retirement, as they desired. While this group is receiving a COLA, it is 7.5%, not 10% as the others, and this COLA at the earliest will become effective January 1, 2008, not retroactively as they desired. Those retiring with no early retirement penalty will receive a 10% COLA five years from retirement date.

Those subclass members who were active prior to the Plan Merger Date will receive a 10% COLA after 5 years. As a result of the merger, their normal age for retirement has been reduced from age 62 to age 60. But the subclass members in this group have also suffered a loss in benefits as a result of the merger – namely, the cap on the number of years

they were permitted to accrue service credits was reduced from 35 to 25. While this reduction in benefits will affect individuals differently depending on how long they actually work, there is also a clear loss to this group.

Under these circumstances, the proposed settlement equitably allocates some sacrifice between those who are active and those who are retired.[4] Most importantly, both groups, indeed all participants, are far better off as a result of the Plan merger since the merged Plan is now fully funded. Based on the most recent actuarial reports, the IAM Grand Lodge Plan is more than 100% funded, and since TCU will pay the present actuarially-determined value of the benefit improvements under the proposed settlement, said improvements will have no material impact on Plan funding.

For these reasons, the proposed settlement is fair, adequate, and equitably treats subclass members. It is well within the range of possible approval and should be preliminarily approved by this Court.

## V.     The Proposed Notice Should Be Approved And A Hearing Date Set For Consideration Of The Proposed Settlement.

In addition to requiring court approval, Rule 23(e) of the Federal Rules of Civil Procedure requires notice to class members of a compromise of the class action "in such manner as the court directs." Fed. Rule Civ. P. 23(e). "The standard for the settlement notice under Rule 23(e) is that it must 'fairly apprise' the class members of the terms of the

---

[4]     Those who retired without an early retirement penalty and those who terminated when vested, prior to the Merger Date, will receive a 10% COLA after 5 years. Normal retirement for these groups will remain at 62.

proposed settlement and of their options." *Gottlieb v. Wiles*, 11 F.3d 1004, 1013 (10th Cir. 1993) (*quoting* 3B *Moore's Federal Practice* ¶ 23.80[3]). *Accord, In re Mid-Atlantic Toyota Antitrust Litig.*, 585 F. Supp. 1553, 1563 (D. Md. 1984).

The proposed notice, attached hereto as Exhibit B, meets this standard. The notice describes the class action, the members of the class, the settlement process, and the benefits of settlement to class members. The terms of the settlement are summarized and explained. The notice identifies who will pay attorneys' fees for class counsel. The notice further explains that class members need not take any action to participate in the settlement, and describes the steps class members must take to object to the settlement. Finally, the notice states the place of the hearing, and provides the name, address and telephone number of counsel for the subclass who can provide further information. The notice will state the date and time of the hearing when set by the Court.

Because the proposed notice fully apprises class members of the terms of the settlement and their options, the notice should be approved for mailing to class members and a date set for a hearing to consider the settlement.

V.   **Conclusion.**

For reasons described above, the Plan respectfully requests that this Court enter an order (1) finding that the proposed settlement of this action is within a range of reasonableness warranting the distribution of a notice of settlement to the subclass; (2) approving the proposed notice to the subclass; and (3) setting a hearing date to determine whether to approve the proposed settlement.

Respectfully submitted,


  /s/  Jeffrey A. Bartos
Jeffrey A. Bartos
Guerrieri, Edmond, Clayman & Bartos, P.C.
1625 Massachusetts Avenue, NW
Suite 700
Washington, DC  20036-2243
(202) 624-7400
Counsel for TCU Staff Retirement Plan


John L. Bohman
O'Donoghue & O'Donoghue, L.L.P.
4748 Wisconsin Avenue, NW
Washinton, DC  20016
(202) 362-0041
Counsel for IAM Grand Lodge Plan