IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| R. A. SCARDELLETTI, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ANTHONY SANTORO, SR., *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. JFM-97-3464 |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs, the Trustees of the Transportation Communications International Union Staff Retirement Plan (TCU Staff Plan) and their successor, the International Association of Machinists and Aerospace Workers Pension Plan (IAM Grand Lodge Plan) submit this memorandum in support of the motion for final approval of the settlement agreement in this matter.

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts and proceedings which underlay the present dispute are set forth in detail in the plaintiffs' Memorandum in Support of Preliminary Approval, which is incorporated by reference herein.

The present dispute involves one term in an earlier settlement agreement, which provided that no "benefit improvements" would be adopted unless and until certain other

modifications were made to the Plan. The parties disagree on whether changes to the Plan caused by a merger into the successor plan were "benefit improvements" triggering this provision. The settlement now before the Court will resolve this dispute, provide important benefits to the active subclass, and avoid further litigation.

**A.     The Present Dispute.**

In August 2005, TCU affiliated with the International Association of Machinists and Aerospace Workers ("IAM"). As a result, the TCU Staff Plan was merged into the IAM Grand Lodge Plan, effective September 12, 2005 (Plan Merger Date). 2d Declaration of LuAnn Davis, ¶ 4 (Exh. B hereto).

At the time of the Plan merger, the TCU Staff Plan was funded at approximately 64% of accrued benefits, and the larger IAM Plan was funded at over 100% of accrued benefits. After the merger, the IAM Grand Lodge Plan remained, and continues to remain, fully funded at over 100%. *Id.* ¶ 5.

After the merger of the plans, TCU employees began accruing benefits under the terms of the IAM Grand Lodge Plan. Benefits were not the same as they had been under the TCU Staff Plan. Normal retirement age under the TCU Staff Plan had been age 62, but under the Grand Lodge Plan normal retirement age became age 60 for those in active status. In addition, for these participants, the actuarial reduction for early commencement from normal retirement was favorably reduced from .5% per month (or 6% per year) to .4% per month (or 4.8% per year). Also, a generally more favorable definition of how compensation was determined was added to the Plan. However, the cap on the number of years a

participant could accrue service credits was reduced from 35 years under the TCU Staff Plan to 25 years under the IAM Grand Lodge Plan. The TCU Staff Plan actuary concluded that the overall value of benefits after the changes was less than the value would have been if the plans had not merged. *Id.* ¶ 6.

The active subclass – which encompasses those in active service on January 1, 1999 – has asserted that the changes in benefits resulting from the merger into the IAM Plan should trigger the requirement in the approved settlement agreement that additional benefits be granted. In particular, the subclass sought to have pensions that were subject to an early retirement penalty recalculated, retroactively, with a normal retirement age of 60, not 62. The subclass also sought a 10% COLA five years after the date of retirement for certain members.

The Plaintiffs have argued that no such modifications are required because, actuarially, the value of the benefits was not increased, but reduced as a result of the merger. The subclass, in turn, has maintained that the actuarial value of these changes is irrelevant. In their view, the approved settlement provides that benefit improvements described above are owed when "any benefit improvements" are provided, regardless of whether these improvements are combined with offsetting benefit reductions.

**B.    The Current Settlement.**

After spending approximately a year-and-a-half exchanging settlement proposals, actuarial and demographic information, the parties requested the Court to appoint Magistrate

Judge Grimm to mediate this dispute. With Judge Grimm's assistance, the parties reached a settlement summarized below:

1. Members of the subclass who retired prior to the Plan Merger Date without an early retirement penalty shall receive a COLA equal to 10% of the member's monthly annuity starting on the fifth anniversary of the member's retirement;

2. Members of the subclass who retired prior to the Plan Merger Date with an early retirement penalty shall (i) have their monthly annuity recalculated effective January 1, 2008, using age 60 as the normal retirement age; and (ii) receive a COLA equal to 7.5% of their monthly annuity as recalculated, starting the later of January 1, 2008 or the fifth anniversary of the member's retirement;

3. Members of the subclass who terminated their employment relationship with TCU prior to the Plan Merger Date, at a time when they were vested in the TCU Staff Plan and who did not retire prior to the Plan Merger Date, will receive a 10% COLA on the fifth anniversary of the date the member begins collecting benefits under the Plan; but their normal retirement benefits remain at age 62; and

4. Members of the subclass in active status on the Plan Merger Date shall receive a cost of living adjustment equal to 10% of the member's monthly annuity on the fifth anniversary of the member's retirement.

Under the proposed settlement, the subclass will release any and all claims known or unknown that any of them may have against the TCU Staff Retirement Plan and the IAM Grand Lodge Plan, their current and former Trustees, any other fiduciaries, the TCU and the IAM Grand Lodge, their subordinate bodies and all of their officers, agents, representatives, heirs, administrators, executors, directors, employees, and attorneys except for the undertaking in this Agreement.

The settlement also provides that TCU will pay the reasonable attorneys fees and costs incurred in representing the subclass.

On May 29, 2008, this Court granted the plaintiffs' Motion for Preliminary Approval, finding the proposed settlement to be "within the range of a possible approved settlement," and "reached by arms-length bargaining by sophisticated parties, represented by experienced and competent counsel." Letter Order (May 29, 2008).

The Court also found that the proposed notice to the class was "fair and appropriate," and decided that it be mailed to each member of the Settlement Subclass by first class mail." *Id.*

On June 6, 2008, the TCU mailed the class notice to each member of the settlement subclass. *See* Declaration of LuAnn Davis (Exh. A hereto). The notice advised class members of the hearing date and the procedure for filing and serving objections. Objections, if any, are due on July 11, 2008, and will be addressed at the final approval hearing on July 15, 2008.

## ARGUMENT

### THE PROPOSED SETTLEMENT SHOULD BE APPROVED

The settlement of class actions is encouraged by the courts and favored by public policy. Substantial judicial resources are conserved by avoiding lengthy litigation, uncertain outcomes, and difficulties of proof. Alba Conte & Herbert Newberg, *Newberg on Class Actions*, 87 § 11:41 (4th ed. 2002).

A class action may be settled only with approval by the court. Fed. R. Civ. P. 23(e). Settlement maybe approved "only after a hearing and on [a] finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see generally In re Mid-Atlantic Toyota Antitrust Litig.*, 605 F. Supp. 440, 442 (D. Md. 1984). While any objections to the settlement should be heard, "it is entirely in order for the trial court to limit its proceedings to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991) (*quoting Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975)).

In evaluating a settlement, this Court must review its "fairness and adequacy." *Scardelletti v. DeBarr*, 43 Fed. Appx. 525, 528 (4th Cir. 2002); *Jiffy Lube*, 927 F.2d at 158-59; *Montgomery County Real Estate Antitrust Litig.*, 83 F.R.D. 305, 315-16 (D. Md. 1979).

The settlement here is both fair and adequate.

### **Fairness**

A settlement is presumed fair when it is reached without collusion, and after good-faith arms-length bargaining. *Newberg on Class Actions*, 118-19 § 11:42. The "fairness" factor can be determined by examining:

(1) the posture of the case at the time settlement was proposed,
(2) the extent of discovery that has been conducted,
(3) the circumstances surrounding the negotiations, and
(4) the experience of counsel in the area [being litigated].

*Jiffy Lube*, 927 F.2d at 159-60; *see also Hammon v. Barry*, 752 F. Supp. 1087, 1093 (D.D.C. 1990).

Here, the Court has already found that the proposed settlement was reached through good faith, arm's length bargaining by counsel who have been involved in this litigation for over ten years. While no formal discovery was taken regarding this particular dispute, the Plan provided the Class representative with actuarial estimates of various settlement proposals as well as the actuarial estimate of the present value of the benefit changes made after the Plan merged. In addition, the Class representative consulted his own actuary. After a year-and-a-half of exchanging proposals, actuarial reports and demographic information, the parties sought the assistance of Magistrate Judge Grimm, who supervised the final settlement negotiations, assuring that the negotiations were conducted in good faith. Each party was represented in settlement negotiations by counsel with years of experience in the application and interpretation of ERISA. The settlement here is fair by any measure.

### **Adequacy**

To determine whether a settlement agreement is "adequate," courts consider the following factors:

1. the relative strength of [the parties'] cases on the merits;
2. the existence of any difficulties of proof or strong defenses ... if the case goes to trial;
3. the anticipated duration and expense of additional litigation
4. the solvency of [the parties] and the likelihood of recovery on a litigated judgment; and
5. the degree of opposition to the settlement.

*Scardelletti*, 43 Fed. Appx. at 528; *Jiffy Lube*, 927 F.2d at 159.[1]

---

[1] Because this case involves a defendant class, the Court should apply these (continued...)

The Court should not turn the settlement hearing into a trial or even a rehearsal of the trial, as the purpose of settlement is to avoid wasteful litigation. *Flinn v. FMC Corp.*, 528 F.2d at 1172-73; *see also Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974) (the court "need only evaluate the probable outcome of the litigation and is not required to weigh and decide each contention"). Nor should the Court reach any dispositive conclusions on unsettled legal issues. Instead, the Court's role involves a "balancing of likelihoods rather than an actual determination of the facts and law in passing upon whether the proposed settlement is fair, reasonable and adequate." *Flinn v. FMC Corp.*, 528 F.2d at 1172-73 & n.4 (citation omitted).

Finally, while the Court should consider the strength of class members' opposition, if any, to the settlement, opposition to a settlement by a number of class members does not require a conclusion that it is unfair or inadequate. *Montgomery*, 83 F.R.D. at 317-18. In fact, the court in *Bryan v. Pittsburgh Plate Glass Company* affirmed the approval of a settlement where more than twenty percent of the class members objected, reasoning that Rule 23's protection of the class stemmed from the requirement of approval by the court, not by a certain percentage of the class. 494 F.2d at 803.

Applying these factors, it is clear that the issue now confronting the parties was not contemplated at the time of the original litigation. The subclass would face significant legal hurdles to prevail in its position that the use of the standard provisions of the IAM Grand

---

[1](...continued)
factors in a way which reflects the posture of this case.

Lodge Plan post-merger triggered a requirement to pay increased benefits, when the net effect of these changes was to reduce the value of benefits.

Certainly, the circumstances which developed after the original settlement, namely, the stock market meltdown of 2000-2002 and the Plan merger which insured that the promised pensions could in fact be paid, were not anticipated by the parties. We believe it is questionable that this Court would interpret the term "any benefit improvement" in the approved settlement to include the use of IAM Grand Lodge Plan's provisions post-merger.

Moreover, given the uncertainty of a recovery by the subclass members, the total amount of the settlement offered is generous. The present value of the benefit improvements provided under the settlement has been actuarially determined to be 87% of the present value of the benefit improvements sought by the subclass. 2d Davis Decl., ¶ 7.

To be sure, the settlement does not give everyone everything that they might want. For example, those who retired with an early retirement penalty will have the penalty eliminated prospectively, but not retroactively. Likewise, while this group is receiving a COLA, it is 7.5%, not 10% as the others, and this COLA at the earliest will become effective January 1, 2008, not retroactively as they desired. Those retiring with no early retirement penalty will receive a 10% COLA five years from retirement date.

Those subclass members who were active prior to the Plan Merger Date will receive a 10% COLA after 5 years. As a result of the merger, their normal age for retirement has been reduced from age 62 to age 60. But the subclass members in this group have also suffered a loss in benefits as a result of the merger – namely, the cap on the number of years

they were permitted to accrue service credits was reduced from 35 to 25. While this reduction in benefits will affect individuals differently depending on how long they actually work, there is also a clear loss to this group.

Under these circumstances, the proposed settlement equitably allocates some sacrifice between those who are active and those who are retired.[2] Most importantly, both groups, indeed all participants, are far better off as a result of the Plan merger since the merged Plan is fully funded. Based on the most recent actuarial reports, the IAM Grand Lodge Plan is more than 100% funded, and since TCU will pay the present actuarially determined value of the benefit improvements under the proposed settlement, said improvements will have no material impact on Plan funding.

For these reasons, the proposed settlement is fair, adequate, and equitably treats subclass members. It should be approved by this Court.

## CONCLUSION

For reasons described above, the plaintiffs respectfully request that this Court enter an order approving the proposed settlement of this action.

---

[2] Those who retired without an early retirement penalty and those who terminated when vested, prior to the Merger Date, will receive a 10% COLA after 5 years. Normal retirement for these groups will remain at 62.

Respectfully submitted,

/s/ Jeffrey A. Bartos
Jeffrey A. Bartos
Guerrieri, Edmond, Clayman & Bartos, P.C.
1625 Massachusetts Avenue, NW
Suite 700
Washington, DC  20036-2243
(202) 624-7400
Counsel for TCU Staff Retirement Plan

John L. Bohman
O'Donoghue & O'Donoghue, L.L.P.
4748 Wisconsin Avenue, NW
Washinton, DC  20016
(202) 362-0041
Counsel for IAM Grand Lodge Plan

Dated:  July 9, 2008