UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| R.A. SCARDELLETTI, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No.: JFM-97-3464 |
| v. ) | |
| ) | |
| ANTHONY SANTORO, SR., et al. ) | |
| ) | |
| Defendants. ) | |

**THE DEFENDANT ACTIVE SUBCLASS' MEMORANDUM
IN SUPPORT OF PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

I. Introduction

The present dispute involves the alleged breach of a prior class action settlement in this litigation ("The Prior Settlement"). George Thomas DeBarr, as the class representative for the Defendant Active Subclass, has asserted that the Prior Settlement was breached when the Transportation Communications Union Staff Retirement Plan ("Staff Plan") was merged into the International Association of Machinists and Aerospace Workers Pension Plan ("IAM Grand Lodge Plan"). The Active Subclass, previously certified by this Court, consists of all Staff Plan participants who had not retired or terminated service under the Staff Plan as of January 1, 1999 (with certain individual exclusions).

The Defendant Active Subclass and the Plaintiffs, the Trustees of the Staff Plan and its successor the IAM Grand Lodge Plan, have now reached a settlement concerning the alleged breach of the Prior Settlement ("the Current Settlement"). This Court preliminarily approved the Current Settlement on May 29, 2008 and set a fairness hearing for July 15, 2008. All members of the Active Subclass were

sent notice regarding the Current Settlement on June 6, 2008. As of the date this memorandum is filed, no Active Subclass member has objected to the settlement. The Plaintiffs have now filed a Motion for Final Approval of the Class Action Settlement. For the reasons set forth below, Mr. DeBarr, as Active Subclass representative, supports this Motion.

Attached to this brief (as Exhibit A) is the "Defendant Active Subclass' Response to Plaintiffs' Pre-Hearing Memorandum In Support of Class Action Settlement" that was filed in support of preliminary approval of the Current Settlement. That memorandum details the terms of the Prior Settlement; the Active Subclass' position on why they believe the Prior Settlement was breached when the Staff Plan merged into the IAM Grand Lodge Plan; and the history of the settlement negotiations that began in early 2006. Rather than repeat this history in this current Memorandum, Mr. DeBarr incorporates that memorandum by reference in support of the Motion for Final Approval of the Current Settlement.

## II. The Proposed Settlement

The terms of the Current Settlement are as follows:

1. Members of the Active Subclass who retired prior to the Plan Merger Date without an early retirement penalty shall receive a COLA equal to 10% of the member's monthly annuity on the fifth anniversary of the member's retirement ("Annuity Starting Date");

2. Members of the Active Subclass who retired prior to the Plan Merger Date with an early retirement penalty shall (i) have their monthly annuity recalculated effective January 1, 2008, using age 60 as the normal retirement age; and (ii) receive a COLA equal to 7.5% of their monthly annuity as recalculated starting the later of January 1, 2008, or the fifth anniversary of the member's Annuity Starting Date;

3. Members of the Active Subclass in active status on the Plan Merger Date shall receive a cost of living adjustment equal to 10% of the member's monthly annuity on the fifth anniversary of the member's retirement; and

4. Members of the Active Subclass who terminated their employment relationship with

TCU prior to the Plan Merger Date, at a time when they were vested in the TCU Staff Plan, who did not retire prior to the Plan Merger Date, shall receive a 10% COLA on the fifth anniversary of the date the member begins collecting benefits under the Plan, but their normal retirement benefits remain at age 62.[1]

The TCU will also pay the reasonable fees and expenses of the Active Subclass' counsel. Under the proposed settlement, the Active Subclass members will release any and all claims concerning the Prior Settlement that any of them may have against the Staff Plan and the IAM Grand Lodge Plan, their current and former Trustees, any other fiduciaries, the TCU and the IAM Grand Lodge, their subordinate bodies and all of their officers, agents, representatives, heirs, administrators, executors, directors, employees, and attorneys whether known, unknown or hereafter discovered or whether now or hereafter fully, partially or not disclosed except for the promises contained in the Settlement Agreement.

### III. Argument

**A.     The Standard for Approval.**

In preliminarily approving the settlement, this Court has already found that the settlement is "within the range of possible approval."  After preliminary approval, notice was given to the Active Subclass of a fairness hearing, at which all interested parties would be afforded an opportunity to be heard on the proposed settlement. The ultimate purpose of the fairness hearing is to determine if the proposed settlement is fair and adequate. *See Armstrong v. Bd. of Sch. Dir.,* 616 F.2d 305, 312-314; (7th Cir. 1980); *Clark v. Experian Info. Solutions, Inc*., No. 8:00-1217-22, 2004 WL 256433 at *4-5, (D.S.C. Jan. 14, 2004); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 855 F.Supp. 825, 827-828 (E.D.N.C. 1994); *Grice v. PNC Mortgage Corp. of America,* No. Civ. A. PJM-97-3084, 1998 WL

---

[1] There were several individuals who would otherwise be in the Active Subclass but were excluded because they were either Plaintiffs or otherwise conflicted including Howard Randolph, R.A. Scardelletti, Donald Bujold, Mitchell Kraus and Joel Parker.  Although not members of the Active Subclass these individuals will also receive the applicable benefit improvements.

350581 at *-2 (D. Md. May 21, 1998); *In Re Mid-Atl. Toyota Antitrust Litig.,* 564 F.Supp. 1379, 1383 (D. Md. 1983).

Fairness is primarily a determination of whether the settlement was reached by arms-length bargaining rather than by collusion. If the settlement is "fair" the Court must then judge whether the settlement is "adequate" under the following five factors: (1) the relative strength of each party's case on the merits, (2) the existence of any difficulties of proof or strong defenses the parties are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the parties and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). Of course, the "most important" factor in determining whether a settlement is adequate is the relative merits of each party's case. *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172 (4th Cir. 1975), *cert. denied*, 424 U.S. 967 (1976); *In Re A.H. Robbins Co. Inc.,* 880 F.2d. 709, 748-52 (4th Cir. 1989), *cert. denied*, 493 U.S. 959 (1989).

### B.    The Settlement Is "Fair" and the Result of Non-Collusive Arms-Length Negotiation.

The settlement was "fair" because it was reached by arms length bargaining. As set forth in the Active Subclass' brief with respect to preliminary approval of the Current Settlement, although no formal discovery was taken in this action, numerous documents and demographic data were disclosed by the Plaintiffs and actuaries were consulted. Settlement negotiations stretched over almost two years. The issue in this case was also singular and discrete: Did the merger of the TCU Staff Plan and the IAM Grand Lodge Plan breach the moratorium on benefit improvements contained in the Prior Settlement and TCU Executive Council Resolution? This essentially then turned on an interpretation of what the phrase "any benefit improvements" meant in the Prior Settlement. As primarily a question of law the dispute

was more amenable to a resolution without extensive discovery. Also, the Active Subclass was represented by counsel approved previously by this Court and who has over twenty-three years of experience in employee benefits litigation.

Finally, the settlement was mediated by Magistrate Judge Grimm who witnessed that the parties were truly adverse and engaged in arms length negotiations.

### C. The Settlement is Adequate for the Active Subclass.

Other than the final factor regarding objections filed by class members, the five part "*Jiffy Lube*" test on the adequacy of a settlement simply incorporates the "settlement calculus" used by most parties in civil litigation. The first two factors (the relative strength of each party's case on the merits and the existence of any difficulties of proof or strong defenses the parties are likely to encounter if the case goes to trial) simply assess litigation risk. The third factor (the anticipated duration and expense of additional litigation) assesses litigation expense and any hardship that might be associated with extended litigation. The fourth factor (solvency and the likelihood of recovery on a litigated judgment) assesses collection risk.

As to litigation risk the Active Subclass would have the burden of establishing that the merger of the Staff Plan into the Grand Lodge Plan violated the moratorium on "any benefit improvements" that was contained in the Prior Settlement. The Active Subclass recognizes that it is not completely certain how a Court would interpret the term "any benefit improvements" and whether in construing the term the Court would look to the overall actuarial impact of several plan changes made at once. In addition it is uncertain how a Court would factor in the Trustees assertion that the merger was actually necessary for the future of the Plan given the Staff Plan's funded status. Similarly it is not completely certain what relief a Court would order even if it did find a breach of the "no benefit improvements" charge and

5

whether this breach would mandate the benefit increases sought by the Active Subclass.

There is little doubt that further litigation would be protracted and lead at least to an appeal to the United States Court of Appeals for the Fourth Circuit.[2] There would also be several procedural hurdles for relief that could make the litigation even more protracted. The Plaintiffs in this litigation were the Trustees of the Staff Plan. The Staff Plan no longer exists and so the action would, at a minimum, need to be amended to bring a cross-claim against the Trustees of the IAM Grand Lodge Plan. Further, the TCU was not a party to the Prior Settlement although it was bound by its Executive Council Resolution (which was specifically styled as a contract with the Active Subclass) where it agreed not to increase benefits until the benefits sought by the Active Subclass were restored. Also the merger agreement regarding the Plans was between the TCU and the IAM. Thus the Active Subclass faced the prospect of bringing three more parties into this litigation (the Trustees of the IAM Grand Lodge Plan, the TCU and the IAM) in order to obtain the relief sought—an amendment of the IAM Grand Lodge Plan and the Plan merger agreement to restore the benefits detailed in the Prior Settlement. In the proposed settlement the IAM Grand Lodge Plan Trustees have consented to the jurisdiction of the Court and the IAM and the TCU have agreed to execute any amendment to the Plan merger agreement.

As to the final factor regarding objections, as of the date this brief was filed, no objections to the Current Settlement have been submitted to the Court (although the deadline for submitting objections has still not expired). Although not dispositive many courts have found that a small number of objectors is strong evidence in favor of the fairness of the settlement. *In re Wireless Telephone Federal Cost Recovery Fees Litigation* 396 F.3d 922, 933 (8th Cir. 2005); *In re Cendant Corp. Litigation* 264 F.3d 201, 235 (3rd Cir. 2001); *Williams v. Sprint/United Management Co.* 2007 WL 2694029, 4

---

[2]The Prior Settlement went to the Fourth Circuit, the United States Supreme Court and back to the Fourth Circuit.

(D.Kan.) (D.Kan., 2007).  That said, since objections are only one factor considered "it is well established that a settlement can be fair notwithstanding a large number of objectors." Grant v. Bethlehem Steel Corp.  823 F.2d 20, 23 (2nd Cir. 1987) (collecting cases).  If any objections are received they will be addressed by counsel for the Active Subclass at the Fairness Hearing.

　　　　The settlement is also a fair allocation among Active Subclass members.  The relief sought by the Active Subclass was retroactive restoration of age 60 normal retirement and a 10% COLA in the 5th year of retirement.  As reflected in the Current Settlement agreement, this restoration of benefits had varying financial effects for members of the Active Subclass.  For those participants who were active with the TCU on the Plan Merger Date, they have already received age 60 normal retirement through the Plan Merger.  Through the Current Settlement they will, in the future, receive a 10% COLA at the fifth anniversary of their retirement. These individuals have not retired (or only recently retired) so they will not enjoy this COLA for several more years.  More importantly, however, these participants are subject to the 25 year cap on service that was adopted in the Plan Merger and is not applicable to other Active Subclass members.  Members of the Active Subclass who retired prior to age 60 stood the most to gain from the litigation.  If successful they could have received up to a 12% retroactive improvement in their benefit because of the restoration of age 60 normal retirement and a 10% increase at the fifth anniversary for a total benefit increase of up to 22%.  For this group, the maximum increase has been limited to 19½ % and retroactivity has been limited to January 1, 2008 for the restoration of age 60 normal retirement and the later of January 1, 2008 or the fifth year of retirement for the 7.5% COLA benefit.  For participants who worked until age 62 before retiring or who have separated from service prior to the Plan Merger Date but have not yet retired, they have received (or will be eligible to receive) an unreduced benefit at age 62 and the 10% COLA in the 5th year or retirement.  These participants, however, had to

wait an additional two years to receive that unreduced benefit. Mr. DeBarr, as class representative, believes that the Current Settlement therefore provides an equitable resolution among these groups in the Active Subclass.

In sum the Current Settlement is a reasonable, fair and adequate resolution of the present dispute.

### IV.  Conclusion

The Current Settlement was the result of arms-length bargaining between the parties. The Current Settlement is a fair and adequate resolution of this dispute. Accordingly, Mr. DeBarr, as the representative for the Active Subclass, respectfully requests that the Current Settlement be approved.

                Respectfully submitted,

                _____/s/_____
                Kenneth M. Johnson
                MD Bar No. 23416
                Tuggle Duggins & Meschan, P.A.
                P.O. Box 2888
                Greensboro, NC  27402
                Telephone: (336) 271-5264
                Facsimile:  (336) 274-6590
                Counsel for the Active Subclass

Dated: July 9, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| R.A. SCARDELLETTI, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No.: JFM-97-3464 |
| v. ) | |
| ) | |
| ANTHONY SANTORO, SR., et al. ) | |
| ) | |
| Defendants. ) | |

**CERTIFICATE OF SERVICE**

    I hereby certify that on July 9, 2008, I electronically filed the foregoing *Defendant Active Subclass' Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement* with the Clerk of Court using the CM/ECF system which will send notification of such filings to the following:

Jeffrey Andrew Bartos
Guerrieri Edmond Clayman and Bartos, P.C.
1625 Massachusetts Ave. NW Ste. 700
Washington, DC 20036-2243
*Attorneys for Plaintiffs and Counter Defendants*
 *Scardelletti, Ferlin, Parker and Bujold*

    I hereby certify that on July 9, 2008, I mailed by U.S. Mail the foregoing *Defendant Active Subclass' Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement* to the following non-ECF participant:

John L. Bohman
O'Donoghue & O'Donoghue, L.L.P.
4748 Wisconsin Avenue, NW
Washington, DC 20016
*Attorney for IAM Grand Lodge Plan*

    Respectfully submitted,

                                              /s/
                                  Kenneth M. Johnson, Esquire
                                  MD Bar No. 23416
                                  Tuggle Duggins and Meschan, P.A.
                                  P.O. Box 2888

Greensboro, NC 27402  
Telephone: (336) 378-1431  
Facsimile:  (336) 274-6590  
Email: kjohnson@tuggleduggins.com  
Counsel for the Active Subclass