EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

R.A. SCARDELLETTI, et al.   )
                            )
        Plaintiffs,         )
                            )   Civil Action No.: JFM-97-3464
        v.                  )
                            )
ANTHONY SANTORO, SR., et al.)
                            )
        Defendants.         )
_____)

**THE DEFENDANT ACTIVE SUBCLASS' RESPONSE TO PLAINTIFFS'
PRE-HEARING MEMORANDUM
IN SUPPORT OF CLASS ACTION SETTLEMENT**

I. Introduction

The present dispute involves the alleged breach of a prior class action settlement in this litigation ("The Prior Settlement"). George Thomas DeBarr, as the class representative for the Defendant Active Subclass, has asserted that the Prior Settlement was breached when the Transportation Communications Union Staff Retirement Plan ("Staff Plan") was merged into the International Association of Machinists and Aerospace Workers Pension Plan ("IAM Grand Lodge Plan"). The Active Subclass, previously certified by this Court, consists of all Staff Plan participants who had not retired or terminated service under the Staff Plan as of January 1, 1999 (with certain individual exclusions).

As described below, the Defendant Active Subclass and the Plaintiffs, the Trustees of the Staff Plan and its successor the IAM Grand Lodge Plan, have now reached a settlement concerning the alleged breach of the Prior Settlement and seek the Court's preliminary approval of this new settlement ("the

Current Settlement"). The Active Subclass agrees with the Trustees that the Current Settlement is fair and adequate. This Memorandum will provide more background concerning the terms of the Prior Settlement, the alleged breach, and why the Active Subclass believes that the Current Settlement is fair and adequate.

## II. The Prior Settlement

This action was initiated in 1997 by the Trustees of the Staff Plan who sought to eliminate a COLA benefit that had been added to the Staff Plan by former Trustees of that Plan. That COLA benefit, adopted in 1991, increased pension amounts by as much as 10% every three years for retirees. The cost of that COLA benefit threatened the viability of the Staff Plan and the Transportation Communications Union ("TCU"). In 1993, once the TCU realized the cost of the COLA benefit, they took action to minimize the future effect of the COLA for active employees but did not feel that they could take any action for retirees who were already receiving the benefits because of the belief that the ERISA and the Internal Revenue Code prevented such a "cut back." The Trustees had, however, sued the former Trustees for fiduciary breach. Subsequently, in that litigation this Court made a ruling with respect to damages that led the Trustees to conclude that eliminating the COLA benefit for retirees was possible. The Trustees of the Staff Plan therefore amended the Plan to eliminate the COLA but in conjunction brought this action against all Staff Plan participants seeking to void the amendment that adopted the COLA benefit. The Trustees alleged that the 1991 amendment that added the COLA benefit was void because the former Trustees of the Staff Plan breached their fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA") when they adopted that amendment.

As mentioned above, the value of the COLA benefit had already been minimized for the Active Subclass beginning in 1993. Further, in order to pay for this "triennial" COLA benefit, the TCU took

certain other action in 1995 with regard to the Active Subclass that adversely affected their benefits such as increasing normal retirement age from age 60 to age 62 and decreasing benefit accruals from 2% of compensation to 1% of compensation.[1] The TCU Executive Council felt that they were forced to make these prospective benefit reductions for the sake of the solvency of the Plan. Thus, at the time the Trustees filed this action, the Active Subclass was faced with an increased normal retirement age, reduced benefit accruals, and a COLA benefit that became less valuable to the Active Subclass as their years of service increased. Recognizing the position these participants were in, the TCU Executive Council, in the form of a March 1998 Resolution, promised that if the COLA benefit was eliminated in litigation they would retroactively restore to the Active Subclass 2% benefit accruals, age 60 normal retirement and a one time 10% COLA at the fifth anniversary of retirement. Based on this promise, the Active Subclass supported the Staff Plan Trustees in the litigation seeking to eliminate the "triennial" COLA benefit.

The parties then engaged in mediated settlement negotiations assisted by Magistrate Judge Paul Grimm. The retiree subclass which stood to benefit if the triennial COLA remained in place was represented by one attorney and class representative while the Active Subclass was represented by Mr. DeBarr and Kenneth Johnson as counsel.

The result of the mediation was the Prior Settlement. That settlement was a compromise. The COLA benefit for the retiree subclass was reduced but not entirely eliminated and the Active Subclass received retroactive restoration of 2% benefit accruals but did not immediately receive age 60 normal retirement or the one time 10% COLA at the 5th year of retirement. What the Active Subclass did

---

[1] There was never any dispute that these prospective actions taken with regard to the Active Subclass with respect to the COLA, reduction in future benefit accruals and increase in normal retirement age were in accordance with the law.

3

receive, however, was commitments that the TCU Executive Council would "refrain from any benefit improvements under the Plan (except those required by law)" until a) age 60 normal retirement was restored (and restored retroactively for any Active Subclass member who had already retired), and b) a 10% COLA at the 5th anniversary of retirement was also restored. It was hoped that the funding status of the Staff Plan would improve to allow for these benefit improvements. Indeed, as part of the Prior Settlement, the Active Subclass received TCU's written commitment that it would contribute 17.5% of payroll to the Plan for six consecutive years. But, members of the Active Subclass were also concerned that after they retired any future benefit improvements might only go to actively employed TCU participants. Therefore a provision was added to the Prior Settlement that Trustees would obtain from the TCU a written commitment that it would refrain from "adopting any benefit improvements under the Plan" until age 60 normal retirement and the 10% COLA at the 5th anniversary of retirement were restored for all members of the Active Subclass – retirees and active employees alike. The written commitment of the TCU recited that it would "refrain form adopting an amendment to increase benefits" until these benefits were restored.

At the fairness hearing, the Court had some questions about this provision in the Prior Settlement and it was explained by counsel for the Staff Plan Trustees as follows:

> Mr. HANRAHAN: Not making other increases is also designed to assure members of the active subclass who retire in the next few years that they're not going to get, if I may use the term, screwed, Your Honor. That some future Administration of the T.C.U—
> THE COURT: That wouldn't (sic) benefit younger members of the active subclass
> MR. HANRAHAN: That's exactly why that's there. It's designed to say some future group of people can't benefit themselves at the expense of people who have retired this year.
> THE COURT: Absolutely. That is what I missed and now I understand…

The Prior Settlement was confirmed by this Court and ultimately the United States Court of

Appeals for the Fourth Circuit.

### III. The Current Dispute

After the Prior Settlement, the funded status of the Staff Plan became a great concern to the TCU and the Staff Plan Trustees. In August 2005 TCU merged with the International Association of Machinists and Aerospace Workers (IAM). As a result of the merger between these two labor organizations, the TCU Staff Plan merged into the IAM Grand Lodge Plan, effective September 12, 2005 ("Plan Merger Date"). The IAM Grand Lodge Plan was well funded even after the Plan merger so the merger resolved the funding concerns of the Staff Plan Trustees.

After the Plan Merger Date, TCU employees began accruing benefits under the terms of the IAM Grand Lodge Plan. Benefits were both increased and reduced from what they had been under the TCU Staff Plan. Benefits were increased for those in active status at the time of the merger because normal retirement age was reduced from age 62 to age 60. In addition, for these participants, the actuarial reduction for early commencement from normal retirement was favorably reduced from .5% per month (or 6% per year) to .4% per month (or 4.8% per year). Also, a generally more favorable definition of how compensation was determined was added to the Plan. Benefits were potentially decreased for these participants because the cap on the number of years a participant could accrue service credits was reduced from 35 to the greater of: (a) 25 years or (b) the number of years accrued at the Plan Merger Date. The Staff Plan's actuary concluded that when considering these changes together, the present value of the Staff Plan's future benefit obligations decreased. Simply stated, the Staff Plan's actuary determined that the net result of these changes was a reduction in the actuarially determined value of the benefits.

Mr. DeBarr, on behalf of the Active Subclass, asserted that the merger of the two Plans breached

5

the Prior Settlement. Mr. DeBarr took issue with some of the assumptions used by the Staff Plan's actuary but more importantly argued that the actuarial value of benefit changes was irrelevant since the Prior Settlement barred "any benefit improvements" for any participant prior to restoration of age 60 normal retirement, and the restoration of the one-time 10% COLA benefit in the 5th year of retirement for *all* members of the Active Subclass. Mr. DeBarr asserted that the Prior Settlement did not provide, nor was it intended to provide, that benefit improvements could be "offset" by benefit reductions in the way asserted by the TCU. Mr. DeBarr therefore demanded that the pensions for Active Subclass members who retired prior to age 62 be recalculated, retroactively to their date of retirement, using age 60 as normal retirement age. In addition, Mr. DeBarr sought a 10% COLA five years after the date of retirement for all members of the Active Subclass including those who remained actively employed.

The TCU and IAM Grand Lodge Trustees have argued that neither the TCU Staff Plan nor the IAM Grand Lodge Plan into which the Staff Plan was merged are responsible for these benefit improvements because, actuarially, the value of the benefits was not increased, but reduced as a result of the Plan merger.

IV. Settlement Negotiations

Settlement negotiations began shortly after Mr. DeBarr's January 26, 2006 letter asserting a breach of the Prior Settlement. Demographic data was exchanged and a number of different settlement proposals were discussed. The parties entered into a tolling agreement but negotiations stalled at points. In late 2006, Mr. DeBarr terminated the tolling agreement, was prepared to reopen the litigation, and had drafted a new Complaint naming as additional parties the IAM Grand Lodge Plan Trustees, the IAM and the TCU. Settlement negotiations then resumed but still, in January 2007, this Complaint was with a courier in Baltimore ready to be filed when the parties agreed to reinstate the tolling agreement and

continue negotiations. In the Spring of 2007 it became obvious that the parties were not going to resolve this dispute without assistance from a mediator. Therefore in the summer of 2007 the parties asked this Court to appoint Magistrate Judge Paul Grimm as a mediator. The mediation was held on December 18, 2007 which resulted in the Current Settlement.

## V. The Proposed Settlement

The terms of the Current Settlement are as follows:

1. Members of the Active Subclass who retired prior to the Plan Merger Date without an early retirement penalty shall receive a COLA equal to 10% of the member's monthly annuity on the fifth anniversary of the member's retirement ("Annuity Starting Date");

2. Members of the Active Subclass who retired prior to the Plan Merger Date with an early retirement penalty shall (i) have their monthly annuity recalculated effective January 1, 2008, using age 60 as the normal retirement age; and (ii) receive a COLA equal to 7.5% of their monthly annuity as recalculated starting the later of January 1, 2008, or the fifth anniversary of the member's Annuity Starting Date;

3. Members of the Active Subclass in active status on the Plan Merger Date shall receive a cost of living adjustment equal to 10% of the member's monthly annuity on the fifth anniversary of the member's retirement; and

4. Members of the Active Subclass who terminated their employment relationship with TCU prior to the Plan Merger Date, at a time when they were vested in the TCU Staff Plan, who did not retire prior to the Plan Merger Date, shall receive a 10% COLA on the fifth anniversary of the date the member begins collecting benefits under the Plan, but their normal retirement benefits remain at age 62.[2]

The TCU will also pay the reasonable fees and expenses of the Active Subclass' counsel. Under the proposed settlement, the Active Subclass members will release any and all claims concerning the Prior Settlement that any of them may have against the Staff Plan and the IAM Grand Lodge Plan, their

---

[2] There were several individuals who would otherwise be in the Active Subclass but were excluded because they were either Plaintiffs or otherwise conflicted including Howard Randolph, R.A. Scardelletti, Donald Bujold, Mitchell Kraus and Joel Parker. Although not members of the Active Subclass these individuals will also receive the applicable benefit improvements.

7

current and former Trustees, any other fiduciaries, the TCU and the IAM Grand Lodge, their subordinate bodies and all of their officers, agents, representatives, heirs, administrators, executors, directors, employees, and attorneys whether known, unknown or hereafter discovered or whether now or hereafter fully, partially or not disclosed except for the promises contained in the Settlement Agreement.

## VI. Argument

### A. The Standard for Approval.

Although Rule 23(e) of the Federal Rules of Civil Procedure does not delineate a procedure for court approval of settlements of class actions, the courts generally have followed a two-step procedure. First, the court conducts a preliminary approval hearing to determine whether the proposed settlement is "within the range of possible approval." Second, assuming that the court grants preliminary approval and notice is sent to the class, the court conducts a "fairness" hearing, at which all interested parties are afforded an opportunity to be heard on the proposed settlement. The ultimate purpose of the fairness hearing is to determine if the proposed settlement is fair and adequate. *See Armstrong v. Bd. of Sch. Dir.*, 616 F.2d 305, 312-314; (7th Cir. 1980); *Clark v. Experian Info. Solutions, Inc.*, No. 8:00-1217-22, 2004 WL 256433 at *4-5, (D.S.C. Jan. 14, 2004); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F.Supp. 825, 827-828 (E.D.N.C. 1994); *Grice v. PNC Mortgage Corp. of America*, No. Civ. A. PJM-97-3084, 1998 WL 350581 at *-2 (D. Md. May 21, 1998); *In Re Mid-Atl. Toyota Antitrust Litig.*, 564 F.Supp. 1379, 1383 (D. Md. 1983).

Fairness is primarily a determination of whether the settlement was reached by arms-length bargaining rather than by collusion. If the settlement is "fair" the Court must then judge whether the settlement is "adequate" under the following five factors: (1) the relative strength of each party's case on the merits, (2) the existence of any difficulties of proof or strong defenses the parties are likely to

encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the parties and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). Of course, the "most important" factor in determining whether a settlement is adequate is the relative merits of each party's case. *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172 (4th Cir. 1975), *cert. denied*, 424 U.S. 967 (1976); *In Re A.H. Robbins Co. Inc.*, 880 F.2d. 709, 748-52 (4th Cir. 1989), *cert. denied*, 493 U.S. 959 (1989).

B.   **The Settlement Is "Fair" and the Result of Non-Collusive Arms-Length Negotiation.**

The settlement was "fair" because it was reached by arms length bargaining. Although no formal discovery was taken in this action, numerous documents and demographic data were disclosed by the Plaintiffs and actuaries were consulted. Settlement negotiations stretched over almost two years. The issue in this case was also singular and discrete: Did the merger of the TCU Staff Plan and the IAM Grand Lodge Plan breach the moratorium on benefit improvements contained in the Prior Settlement and TCU Executive Council Resolution? This essentially then turned on an interpretation of what the phrase "any benefit improvements" meant in the Prior Settlement. As primarily a question of law the dispute was more amenable to a resolution without extensive discovery. The settlement was mediated by Magistrate Judge Grimm who witnessed that the parties were truly adverse and engaged in arms length negotiations.

C.   **The Settlement is Adequate for the Active Subclass.**

Other than the final factor regarding objections filed by class members, the five part "*Jiffy Lube*" test on the adequacy of a settlement simply incorporates the "settlement calculus" used by most parties in civil litigation. The first two factors (the relative strength of each party's case on the merits and the

existence of any difficulties of proof or strong defenses the parties are likely to encounter if the case goes to trial) simply assess litigation risk. The third factor (the anticipated duration and expense of additional litigation) assesses litigation expense and any hardship that might be associated with extended litigation. The fourth factor (solvency and the likelihood of recovery on a litigated judgment) assesses collection risk.

As to litigation risk the Active Subclass recognizes that it is not completely certain how a Court would interpret the term "any benefit improvements" and whether in construing the term the Court would look to the overall actuarial impact of several plan changes made at once. In addition it is uncertain how a Court would factor in the Trustees assertion that the merger was actually necessary for the future of the Plan given the Staff Plan's funded status. Similarly it is not completely certain what relief a Court would order even if it did find a breach of the "no benefit improvements" charge and whether this breach would mandate the benefit increases sought by the Active Subclass.

There is little doubt that further litigation would be protracted and lead at least to an appeal to the United States Court of Appeals for the Fourth Circuit.[3] There would also be several procedural hurdles for relief that could make the litigation even more protracted. The Plaintiffs in this litigation were the Trustees of the Staff Plan. The Staff Plan no longer exists and so the action would, at a minimum, need to be amended to bring a cross-claim against the Trustees of the IAM Grand Lodge Plan. Further, the TCU was not a party to the Prior Settlement although it was bound by its Executive Council Resolution (which was specifically styled as a contract with the Active Subclass) where it agreed not to increase benefits. Also the merger agreement regarding the Plans was between the TCU and the IAM. Thus the Active Subclass faced the prospect of bringing three more parties into this litigation (the Trustees of the

---

[3]The Prior Settlement went to the Fourth Circuit, the United States Supreme Court and back to the Fourth Circuit.

IAM Grand Lodge Plan, the TCU and the IAM) in order to obtain the relief sought—an amendment of the IAM Grand Lodge Plan and the Plan merger agreement to restore the benefits detailed in the Prior Settlement. In the proposed settlement the IAM Grand Lodge Plan Trustees have consented to the jurisdiction of the Court and the IAM and the TCU have agreed to execute any amendment to the Plan merger agreement.

The relief sought by the Active Subclass was retroactive restoration of age 60 normal retirement and a 10% COLA in the 5th year of retirement. As reflected in the Current Settlement agreement, this restoration of benefits had varying financial effects for members of the Active Subclass. For those participants who were active with the TCU on the Plan Merger Date, they have already received age 60 normal retirement through the Plan Merger. Through the Current Settlement they will, in the future, receive a 10% COLA at the fifth anniversary of their retirement. These individuals have not retired (or only recently retired) so they will not enjoy this COLA for several more years. More importantly, however, these participants are subject to the 25 year cap on service that was adopted in the Plan Merger and is not applicable to other Active Subclass members. Members of the Active Subclass who retired prior to age 60 stood the most to gain from the litigation. If successful they could have received up to a 12% retroactive improvement in their benefit because of the restoration of age 60 normal retirement and a 10% increase at the fifth anniversary for a total benefit increase of up to 22%. For this group, the maximum increase has been limited to 19½ % and retroactivity has been limited to January 1, 2008 for the restoration of age 60 normal retirement and the later of January 1, 2008 or the fifth year of retirement for the 7.5% COLA benefit. For participants who worked until age 62 before retiring or who have separated from service prior to the Plan Merger Date but have not yet retired, they have received (or will be eligible to receive) an unreduced benefit at age 62 and the 10% COLA in the 5th year or retirement.

11

These participants, however, had to wait an additional two years to receive that unreduced benefit. Mr. DeBarr, as class representative, believes that the Current Settlement therefore provides an equitable resolution among these groups in the Active Subclass.

In sum the Current Settlement is a reasonable, fair and adequate resolution of the present dispute.

### D.   The Notice to the Active Subclass.

The parties have subsequently agreed to a revised proposed class notice. As noted in the Plaintiff Trustees' brief, the parties agree that this proposed notice fairly apprises class members of the terms of the Current Settlement and their options.

### VII. Conclusion

The Current Settlement was the result of arms-length bargaining between the parties. The Current Settlement is a fair and adequate resolution of this dispute. Accordingly, Mr. DeBarr, as the representative for the Active Subclass, respectfully requests that the Current Settlement be preliminarily approved; that the proposed notice be sent to the Active Subclass; and that the date for a fairness hearing be set.

Respectfully submitted,

/s/
Kenneth M. Johnson
MD Bar No. 23416
Tuggle Duggins & Meschan, P.A.
P.O. Box 2888
Greensboro, NC  27402
Telephone: (336) 271-5264
Facsimile:  (336) 274-6590
Counsel for the Active Subclass

Dated: May 6, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| R.A. SCARDELLETTI, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No.: JFM-97-3464 |
| v. ) | |
| ) | |
| ANTHONY SANTORO, SR., et al. ) | |
| ) | |
| Defendants. ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2008, I electronically filed the foregoing *Defendant Active Subclass' Response to Plaintiffs' Pre-Hearing Memorandum In Support of Class Action Settlement* with the Clerk of Court using the CM/ECF system which will send notification of such filings to the following:

Jeffrey Andrew Bartos
Guerrieri Edmond Clayman and Bartos, P.C.
1625 Massachusetts Ave. NW Ste. 700
Washington, DC 20036-2243
*Attorneys for Plaintiffs and Counter Defendants*
  *Scardelletti, Ferlin, Parker and Bujold*

I hereby certify that on May 6, 2008, I mailed by U.S. Mail the foregoing *Defendant Active Subclass' Response to Plaintiffs' Pre-Hearing Memorandum In Support of Class Action Settlement* to the following non-ECF participant:

John L. Bohman
O'Donoghue & O'Donoghue, L.L.P.
4748 Wisconsin Avenue, NW
Washington, DC 20016
*Attorney for IAM Grand Lodge Plan*

    Respectfully submitted,

                                    /s/
                        Kenneth M. Johnson, Esquire
                        MD Bar No. 23416
                        Tuggle Duggins and Meschan, P.A.

P.O. Box 2888
Greensboro, NC 27402
Telephone: (336) 378-1431
Facsimile:  (336) 274-6590
Email: kjohnson@tuggleduggins.com
Counsel for the Active Subclass